Robinson, J.
The constitutionality of an act passed June 19, 1919, entitled “An Act to codify, *419 consolidate, and clarify the ditch laws of the state according to the report of the commission appointed therefor, under an act passed March 21,1917 (O. L,, 107 v. 611), to amend Sections 3001, 6564, 6565 of the General Code and to repeal all sections of the General Code superseded by, or in conflict with such reported codified consolidation,” found in 108 Ohio Laws, 926 to 971, inclusive, and of an act passed April 29, 1921, entitled “An Act to amend Sections 6452, 6468, 6496, 6497 and 6520 of the General Code, relative to the improvement of county and inter.county ditches and declaring an emergency,” found in 109 Ohio Laws, 224, 225 and 226, is involved in this case. .
That the net result of the work of the commission appointed under the act of March 21, 1917 (107 O. L., 611), did not accomplish all the purposes for which it was appointed may at this time be conceded.
It is claimed that the new ditch act, passed June 19, 1919 (108 O. L., 926), violates Section 19, Article L of the Constitution of Ohio, that “private property shall ever be held inviolate, but subservient to the public welfare, ’ ’ in that it contains no provision that the board of county commissioners shall first find that the improvement will be “conducive to the public health, convenience or welfare,” and that by Section 6453 it impliedly appears that it is neither necessary for the commissioners to so find nor for the fact to esist.
That section reads: “If the county commissioners, or the court, shall find that the improvement petitioned for is not necessary and will not confer benefit upon the lands of the petitioners, and will not be conducive to the public welfare; or that if conferring *420 some benefit to the lands of the petitioners or conducive to some extent to the advantage and welfare of the public that the inconvenience thereof to others, or the probable cost and expense thereof will be disproportionate to such benefit to petitioner, or advantage and welfare to the public, said commissioners, or the court, shall dismiss the petition and proceedings at the cost of the petitioners.”
It is a canon of construction that statutory laws are passed with reference to the provisions of the existing constitution and are to be interpreted if possible in conformity therewith, and were we at liberty to interpret this section as standing alone, and at liberty to make substitution therein of the conjunctive “and” for the disjunctive “or,” we might be able to hold that although it appears the section nowhere specifically requires a finding by the commissioners that the improvement will be ‘ ‘ conducive to the public health, convenience and welfare,” yet, since such improvement necessarily involves the partial taking of private property and the constitution requires such taking to be for the public use, the fact that it is “conducive to the public health, convenience or welfare” must exist and the jurisdiction of the commissioners in respect to such improvement be dependent upon the existence of such fact.
However, when interpreted with Section 6469, General Code, the express purpose upon the part of the legislature to authorize an improvement irrespective of its private character is obvious. That section, after providing that the “total” cost of the improvement shall be assessed proportionately according to special benefits, contains the following proviso: “Provided that the county commissioners, or the *421 court, if, cmd token, it is found that the improvement will benefit the public health, convenience and welfare, or the result will increase to a practicable degree the valuation of property for public taxation, may order such an amount of such total cost, not exceeding ten per cent, paid from the general ditch improvement fund, or if there be not sufficient unappropriated in such fund, from any unappropriated money of the general fund of the county. And the balance shall be assessed according to benefits as herein provided.”
This section is subject to no other interpretation than that the total cost of the improvement shall be assessed proportionately according to special benefits, except in case the commissioners or the court find the improvement will inure to the public health, convenience and welfare, or will increase the valuation of property for public taxation, in which event not exceeding ten per cent, may be paid from general ditch improvement fund, or from any unappropriated money of the general fund of the county, and precludes any interpretation which would make the act conform to the provision of Section 19, Article I of the Constitution, that “Private property shall ever be held inviolate, but subservient to the public welfare.”
Section 6449, General Code, provides when the damages sustained “cannot be readily ascertained until after the completion of the improvement, the hearing thereon may be postponed to a day not more than ninety days after the completion of the same,” and Section 6483 provides that “No appeal, nor any proceeding in error allowed or provided for the parties to an improvement proceeding under this chap *422 ter, except an appeal from a final order granting a. petition for an improvement, shall operate to suspend or defer any of the proceedings provided for the surveying and estimating the cost of any improvement, or the letting of the contract for and the construction of it, all of which shall proceed as if no appeal had been taken or error had been prosecuted.”
Section 6449 contemplates the ascertainment of the damages at a time subsequent to the taking of the property, and its constitutionality might be sustained upon the theory of a distinction between compensation and damages, but Section 6483 provides that “No appeal, nor any proceeding in error allowed or provided for the parties to an improvement proceeding under this chapter, except an appeal from a final order granting a petition for an improvement, shall operate to suspend or defer any of the proceedings provided for the surveying and estimating the cost of any improvement, or the letting of the contract for and the construction of it,” and clearly contemplates, where an appeal is taken from the disallowance of compensation or from the amount of the allowance, a partial taking of the land before .a compensation is paid or secured to be paid therefor, and violates the further provision of Section 19, Article I, “where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money.” Zimmerman v. Canfield, 42 Ohio St., 463.
Section 6473 provides “The finding of * * * the court, for or against any improvement petitioned for under this chapter, and the decision or judgment * * * upon any claim for compensation for property taken or damage to property by reason of the *423 construction of an improvement or the confirmation of any assessment for benefit to property shall be deemed to be a final order.”
Section 6474 provides “Any interested party to an improvement * * * may appeal from any final decision or order made therein, by * * * the common pleas court of the county wherein the proceeding was' instituted. And if * * * the proceeding was commenced originally in the' common pleas court, then any interested party may appeal from any final order or judgment of such common pleas court granting, refusing or locating the improvement petitioned for, to the superintendent of public works as the drainage commissioner provided for in a subsequent section of this act.”
Section 6477 provides:
“Trial or hearing of said appeal on the issue made shall be had under the rules of law for civil cases, so far as the same are applicable * * *. If the appeal be from a decision or order for or against the location or construction of an improvement, or an assessment for benefits, the same shall be heard by the court as a case in equity; but if the decision, order or judgment appealed from be for the payment of, or refusal to pay, a smn. of money in compensation for property taken for such improvement, or as to damages to property affected thereby, the trial shall be to a jury as for a money demand.
“If the appeal be from a court of common pleas to the drainage commissioner, the same shall be heard and decided by said drainage commissioner, or his official board of appeal, if he summon the *424 same, as in this act provided, as are equity cases in courts having such jurisdiction.”
If by this provision the legislature undertook to confer upon the drainage commissioner and his official board of appeal the jurisdiction to review the judgment of the court of common pleas sitting in a political capacity in the place of the board of county commissioners, the conferring of such jurisdiction was probably within such power of the legislature. However, the legislature did not stop there, but undertook to confer upon the drainage commissioner and his official board appellate jurisdiction from the judgment of the court of common pleas upon claims for compensation for property taken and damage to property by reason of the construction of an improvement. The legislature was without power to confer such appellate judicial jurisdiction upon an administrative officer or board by reason of the provisions of Section 1, Article TV of the Constitution.
The legislature by an act (109 O. L., 224) entitled “An Act to amend sections '6452, 6468, 6496, 6497 and 6520 of the General Code, relative to the improvement of county and inter-county ditches and declaring an emergency” attempted by curative statute to remedy the defects in the act of June 19,1919, and provided in Section 6520:
“If the joint board of county commissioners finds that an improvement by ditch or drain or other means is necessary and that it will be conducive to the public health, convenience or welfare, it shall grant the petition therefor, either for the line set forth in the petition, or upon one which in its judgment is more feasible to accomplish the object of *425 the petition. If a petition is granted by a joint board of county commissioners, such board shall proceed under the provisions of this act for single boards of county commissioners to complete necessary surveys, schedules and records, make award of damages to property or compensation for property taken, and ascertain the entire cost of the joint county improvement.
“Section 2. That original sections 6452, 6468, 6496, 6497 and 6520 of the General Code be, and the same are hereby repealed.
“Section 3. This act shall apply to proceedings now pending under ‘An act to codify, consolidate and clarify the ditch laws of the state’ appearing in 108 Ohio Laws, Part I, at pages 926 and following. Boards of county commissioners and courts before whom such proceedings are pending are authorized to correct such proceedings to conform to this act, and when such proceedings are so corrected they shall be held and deemed to be valid in all respects, and any assessments made thereunder shall be valid, and any bonds issued thereunder shall be full and valid obligations of the county.”
In the case of Miller v. Graham, Treas., 17 Ohio St., 1, this court held:
“But since the taking effect of the act of March 24, 1864 (61 O. L., 57) [Secs. 4490 and 4991, Rev. Stat.], ‘supplementary to the act to provide for the locating, establishing and constructing ditches, drains and water-courses,’ a court ought not, by reason of such defects and errors, to perpetually enjoin the collection of an assessment to pay for the making of a ditch, but ought to set aside the proceedings and orders of the commissioners, and allow the par *426 ties seeking such injunction to pursue the remedies authorized by said last mentioned act.
“Said last mentioned act is not in derogation of the 28th section of Article II of the Constitution of Ohio, but is in conformity with the grant of legislative power conferred by it.”
In the case of Burgett v. Norris, 25 Ohio St., 308, this court held:
“The power of the legislature to pass curative statutes, retrospective in their nature, which' do not impair contracts, nor disturb vested rights, is not inhibited by Section 28, Article II of the Constitution.”-
The legislature in the enactment of the act of April 29,1921 (109 O. L., 224, 225 and 226), was acting within its power to pass curative statutes. However, Section 6452 of that act provides that “in such case all the cost and expense connected with their proceedings, as well as the cost and expense of construction of the improvement, shall be assessed upon the property affected beneficially by such improvement,” and Section 6479 of the act of June 19, 1919 (108 O. L., pt. 1, 949), after providing for a trial by jury upon appeal as to the amount of compensation or damages to be paid, provides: “In case such amount differs from the award appealed from, the difference shall be pro-rated by addition or deduction from the assessments, if assessments have been made, upon the property assessed for such improvement. ’ ’
It is the claim of the respondent that a part of the compensation and damages thus awarded is by these sections required to be assessed upon the remaining land, the owners of which claim compensa *427 tion and damages, and upon the deterEnination of this question depends not only the validity of the act of June 19, 1919, and the amendments thereto in the act of April 29, Í921, hut the validity of the ditch law in force prior to the enactment of June 19, 1919. .
In the case of Giesy v. Cincinnati, W. & Z. Rd. Co., 4 Ohio St., 308, this court held:
“The provisions of article 1, section 19, and article 13, section 5, of the constitution — the one requiring compensation to he made without deduction for benefits, when property is appropriated to a public use, and the other providing for compensation irrespective of benefits, where it is taken by a corporation for a right of way — are, in legal effect, identical.
“When taken under either section, its fair market value in cash, at the time it is taken, must be paid to the owner; and the jury, in assessing the amount, have no right to consider or make any use of the fact that it has been increased in value by the proposal or construction of the improvement.”
In the case of City of Cleveland v. Wick, 18 Ohio St., 303, this court held:
. “An assessment upon lands fronting on a street, to reimburse the amount of compensation paid the owner for his other land taken for the use of the street, is authorized by the statute (S. & S. Stat. 834, sec. 1), and is not in violation of the constitutional provision which guarantees to owners of land so "taken, a full compensation ‘without deduction for benefit.’ ”
In the case of Krumberg v. City of Cincinnati, 29 Ohio St., 69, this court held:
*428 ‘ ‘ Section 539, as amended, conf era power upon the council to assess the cost of land appropriated for the street purposes therein specified upon the lots benefited by the improvement for which the appropriation is made, and the amended section 583 prescribes the mode in which the power of assessment is to be carried into effect, in cases in which the council determine to exercise the power for the purposes authorized in section 539.
“The power to levy special assessments to pay for land taken to widen or extend a street, is separate and independent of the power to levy such assessments to pay for grading and paving the street, and the validity of assessments, made for these purposes, does not depend upon whether the powers were exercised at the same, or at different times.”
In the case of Meissner v. City of Toledo, 31 Ohio St., 387, this court held:
‘ ‘ To pay the costs and expense of lands appropriated for the extension of a street, under section 539 of the municipal code, as amended March 20, 1872 (69 Ohio L., 59), a special assessment may be levied in the manner prescribed in sections 584-589 inclusive, ‘upon the lots and lands benefited thereby, including lots and lands that are contiguous and adjacent, as well as those that abut’ upon the street, according to the benefits resulting thereto from the improvement.”
In the case of Chamberlain v. City of Cleveland, 34 Ohio St., 551, this court held:
“To enable a municipal corporation to pay for a local public improvement it may, by assessment, take Jfrom an individual whose lands are subject to assessment and specially benefited by the improve *429 ment, such a portion of the costs thereof as is the equivalent, but not in excess, of the special benefits conferred thereby.
‘ ‘ The whole amount of the assessment must be apportioned amongst the several lots and parcels of land specially benefited, in the proportion that the special benefit to each lot or parcel bears to the whole special benefits conferred by the improvement.”
In the case of Raymond v. City of Cleveland, 42 Ohio St., 522, this court held:
“1. Assessments for street purposes are those special and local impositions upon property in the immediate vicinity of an improved street, which are necessary for the improvement, and laid with reference to the special benefit which such property derives from the expenditure of the money; * * *.
“2. While a taxing district is essential to a valid local assessment, the statute (70 Ohio Laws, 127, Sec. 539), which confined the assessments to ‘lots and lands that are contiguous and adjacent’ to and ‘those that abut upon’ the improvement, and the provisions which defined the powers and prescribed the duties in this regard of the board of improvements * * * and the statutes relating to assessments for street purposes, in force in 1873, were not in conflict with the constitution, art. 13, §6, for any defect therein in that respect.”
In the case of Walsh v. Barron, Treas., 61 Ohio St., 15, this court held:
“The fundamental principle underlying an assessment made on property for the cost and expense of a local public improvement is, that the property is specially benefited by the improvement beyond the- *430 benefits common to the public, and that a ratable assessment of the property to tbe extent of these benefits violates no constitutional right of the owner, and is just and proper. But it can in no case exceed the benefits without impairing the inviolability of private property. ’ ’
In Cincinnati, L. & N. Ry. Co. v. City of Cincinnati, 62 Ohio St., 465, this court held:
‘ ‘ Section 19 of article 1 of the constitution is a limitation upon section 6 of article 13 as to the power of assessments.
' “Compensation paid to a land owner for lands taken by appropriation proceedings to open a street, dannot be assessed back upon the lands of the owner remaining after such taking. Neither can the costs and expenses incurred in such proceeding be so assessed. Cleveland v. Wick, 18 Ohio St., 303, overruled.”
In the case of City of Dayton v. Bauman, 66 Ohio St., 379, this court held:
“The limitation of Section 19 of Article I of the constitution on Section 6 of Article 13 as to assessments, goes to the full extent of prohibiting the raising of money directly or indirectly by assessment to pay compensation, damages or costs for lands appropriated by the public for public use. Railway Co. v. Cincinnati, 62 Ohio St., 465, approved and followed.
“Said limitation does not affect or prohibit the raising of money by assessment to pay for surface improvement of streets, sewers, etc., so long as the assessment does not exceed the special benefits conferred. Walsh v. Barron, 61 Ohio St., 15, approved and followed.”
*431 It will thus be seen that this court in the past has not consistently adhered to the same theory in its construction of Section 19, Article I, and Section 6, Article XIII, and their relation to each other; that up to the year 1900 it consistently held that the two sections were independent of each other and that the one was not a limitation upon the other; that in the year 1900, in the case of Railway Co. v. Cincinnati, supra, it for the first time adopted the construction that Section 19, Article I, was a limitation upon Section 6, Article XIII. The doctrine of that case was specifically approved and followed in 1902 in the case of Dayton, v. Bauman, supra.
It seems to have been the theory in the cases of Railway v. Cincinnati, supra, and Dayton v. Bauman, supra, that in Section 19, Article I, the word “public,” as used in the phrase “where private property shall be taken for public use,” meant the state or some political subdivision thereof, and, therefore, that all property appropriated “for public use” must be paid for by the state or some political subdivision of the state, and that no portion of such compensation could be required to be paid by the property specially benefited thereby, which, carried to its logical conclusion, and applied to the many situations which arise under our present statutes for various public improvements, would result in all compensation for property taken being paid out of the general revenue fund, and in the case of appropriation of property for street purposes, which would incidentally, benefit the public, but specially benefit the property on either side of the street appropriated, the entire expense of such appropriation would be borne by the political subdi *432 vision and all special assessments for such, appropriation be unconstitutional. A distinction is attempted to be drawn between assessments for tbe improvement of the street and assessments, for the acquiring of the property. The distinction seems to be without a difference.
If the word “public” in connection with public use, public health and public welfare is to be given the interpretation of meaning all the people of a particular political subdivision, there are but few of the public improvements authorized by statutes that are not prohibited by Section 19, Article I, for such improvements in the great majority of instances are of little concern to the majority of the public, as defined by that standard, but are of vital interest to a neighborhood, a portion of the public, less than a political subdivision.
It has been the policy of this state and the policy of this court, especially in the matter of public ditches, public drainage and public watercourses to treat the word “public” in that section of the constitution as meaning that portion of the public affected by such improvement. It is upon this theory that the great advancement of the state by the process of reclamation of swamp and wet lands has been accomplished; and, while the whole public, as contemplated by the oases of Railway v. Cincinnati, supra, and Dayton v. Raumam, supra, are benefited by the increased prosperity of the state, and the elimination of malaria, typhoid and many other diseases, that portion of the public directly affected has enjoyed the immediate financial benefits therefrom.
*433 The theory enunciated in those cases would result in depriving those lands naturally drained, and by reason of that fact at one time much more valuable than lands not so naturally drained, of all benefits as such dominant lands, while a.t the same time requiring them to share in the expense of reclaiming lands not so fortunately situated.
In its practical operation the interpretation of Section 19, Article I, as a limitation upon Section 6, Article XIII, and upon the power of the general assembly to enact assessing laws — for it has been held by this court in the case of Reeves v. Treasurer of Wood County, 8 Ohio St., 333, that the “power to authorize assessments, as distinguished from taxes proper, is comprehended in the general grant of legislative power to the general assembly” — results not only in securing to the person whose property has been appropriated “compensation therefor,” but in addition thereto special benefits without liability to assessments therefor, which to the extent of the value of such benefits exceeds compensation, prevents assessments on property specially benefited, according to the ratable proportion thereof, and puts the remaining property of the persons so fortunate as to have owned property which the public required in a privileged class. On the other hand the doctrine of Cleveland v. Wick, supra, in its practical operation works even-handed justice to all. The property owner under the constitution receives full compensation for the lands taken without deduction for benefit. He then has parted with his land, and has in its place its value in money, and, as to his remaining lands, he is in exactly the same position as his neighbors. If such remaining lands *434 and the lands of his neighbors receive special benefits, benefits different from and in addition to the benefits which he and his neighbors received as members of the general public, there is, on principle, no reason why such lands should not bear ratably and in proportion to special benefits an assessment therefor.
For these reasons we find it necessary to overrule the cases of Cincinnati, L. & N. Ry. Co. v. City of Cincinnati, 62 Ohio St., 465, and City of Dayton v. Bauman, 66 Ohio St., 379, and to approve and follow the case of City of Cleveland v. Wick, 18 Ohio St., 303.
The act of June 19,1919, in so far as it authorizes the taking of private property for other than the public welfare, is in violation of Section 19, Article I, “Private property shall ever be held inviolate, but subservient to the public welfare”; in so far as it authorizes the taking of private property before “a compensation therefor shall first be made in money, or first secured by a deposit of money,”.is in violation of Section 19, Article I of the Constitution; in so far as it attempts to confer upon an administrative officer, or administrative board, the power to hear and adjudicate upon appeal from the court of common pleas justiciable questions, is in violation of Section 1, Article IV, “The judicial power of the state is vested in a supreme court, court of appeals, court of common pleas, courts of probate, and such other courts inferior to the courts of appeals as may from time to time be established by law”; and in so far as it requires, and in so far as the act of April 29, 1921, requires, an arbitrarily fixed proportion of the cost or expense of the im *435 provement to be assessed against the property specially benefited, irrespective of the proportion which snch assessment bears to the special benefit, the act violates the provision of Section 19, Article I, that “private property shall ever be held inviolate.”
The court, however, being of opinion that the act of June 19, 1919 (108 O. L., pt. 1, 926'to 971, inclusive), thus deleted and as supplemented by the act of April 29, 1921 (109 O. L., 224, 225 and 226), thus deleted, may be made workable, the demurrer to the answer will be sustained and the writ will be allowed.

Demurrer sustained, and writ allowed.

Wanamaker, Matthias and Clark, JJ., concur.
Marshall, C. J., concurs in propositions 1, 2, 3 and 4 of the syllabus and the judgment.
Hough, J., concurs in all of the syllabus, but not in the judgment.
Jones, J., dissents from proposition 5 of the syllabus and from the judgment.
Hough, J.
I agree to the syllabus announced by the majority of the court in this case, and hold the so-called new ditch law to be unconstitutional in the particulars covered by the syllabus and the opinion, and also for other reasons.
My belief is that the act is subject to so much constitutional objection that there is not sufficient residue or remainder upon which to base proceedings, raise revenue for construction and permit construction of ditch improvements. And I am not *436 inclined to be technical concerning the form of this action or the remedy sought, or to go into the question whether or not the surveyor of the county was warranted in refusing to proceed under the order of the county commissioners.
It is quite apparent that the county officials had some doubts as to the constitutionality of the law, and adopted this plan to test it in this court. The end sought was entirely proper and consistent with conscientious public official duty.
Believing as I do, that the act is so constitutionally imperfect as to be unworkable, and that the county officials were justified in their desire for a judicial test before entering into large expenditures, my conclusions incline to a judgment the opposite from that of the majority, resulting in overruling the demurrer to the answer and denying the writ.